50 Cal.App.4th 810 (1996)
THE PEOPLE, Plaintiff and Respondent,
v.
SABINO RAMOS, Defendant and Appellant.
Docket No. F024863.
Court of Appeals of California, Fifth District.
November 1, 1996.
*813 COUNSEL
Joseph C. Shipp, under appointment by the Court of Appeal, for Defendant and Appellant.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Roger E. Venturi and Maureen A. Daly, Deputy Attorneys General, for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
*814 OPINION
MARTIN, Acting P.J.
The defendant, Sabino Ramos, was charged with eight counts of second degree robbery (Pen. Code, § 212.5, subd. (c));[1] three counts of assault with a firearm against some of the robbery victims (§ 245, subd. (a)(2)); one count of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)); and individual misdemeanor counts of being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)) and of driving under the influence (Veh. Code, § 23152, subd. (a)). In addition, it was alleged he personally used a firearm in the commission of the eight robberies (§ 12022.5, subd. (a)) and he inflicted great bodily injury in the commission of two of the robberies and two of the assaults (§ 12022.7, subd. (a)). He entered a plea of not guilty to all charges and denied the enhancement allegations.
Criminal proceedings were briefly suspended pending a hearing and determination by the court that Ramos was mentally competent to stand trial. (§ 1368.)
After entering an additional plea of not guilty by reason of insanity, Ramos pleaded guilty to the eight robbery counts and the three drug-related charges, and admitted all but one of the accompanying enhancement allegations (as discussed below), on the conditions that the three assault charges would be dismissed, that he would receive a court trial on the issue of his sanity, and that, if found sane, he would be sentenced to no more than twenty-two years in prison.
The court subsequently determined Ramos was legally sane at the time of the offenses and sentenced him to 22 years in accordance with the plea bargain. It later recalled the sentence and resentenced him to the same aggregate term after modifying its basis for calculating some of the subordinate terms. On appeal Ramos challenges the sentence in several respects.[2]

*815 FACTS
It is unnecessary for purposes of this appeal to provide anything more than a very brief rendition of the facts. In four separate incidents during a ten-day period in March 1995, Ramos and one or the other of two juvenile accomplices robbed a total of eight victims at gunpoint. In two of these incidents, Ramos and/or his companion struck some of the victims with guns. When Ramos was arrested a few days later, police determined he was under the influence of "PCP" and in possession of methamphetamine.

DISCUSSION

I. The Count 9 Enhancements.[*]
.... .... .... .... .... .... .... .

II. Conduct Credits.

Ramos served 213 days in custody prior to sentencing. Accordingly, the court granted him an additional 31 days' conduct credits pursuant to section 2933.1 which provides in part:
"(a) Notwithstanding any other law, any person who is convicted of a felony offense listed in section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933 [relating to prison credits].
".... .... .... .... .... .... ....
"(c) Notwithstanding Section 4019 or any other provision of the law, the maximum credit that may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest and prior to placement in the custody of the Department of Corrections, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a)." (Italics added.) Among those offenses listed in section 667.5, pertaining to "violent felonies," is "any felony in which the defendant uses a firearm which use has been charged and proved as provided in Section 12022.5...." (§ 667.5, subd. (c)(8).)
Fifteen percent of 213 days is 31.95 days. Thus the trial court awarded Ramos the largest whole number of days which did not exceed 15 percent, or *816 more accurately 15.00 percent. (1a) Ramos contends "15 percent," as that term is used in section 2933.1, should be construed to mean some figure from 15.00 percent to and including 15.99 percent. He claims at a minimum he is entitled to 32 days (15.02 percent, the smallest number of days equal to or exceeding 15 percent), but would also justify 33 days (15.49 percent rounded down to 15 percent) and argues most strongly in favor of 34 days (15.96 percent, the greatest number of days less than 16 percent).
We reject defendant's argument. (2) The fundamental goal of statutory construction is to "ascertain and effectuate legislative intent." (People v. Woodhead (1987) 43 Cal.3d 1002, 1007 [239 Cal. Rptr. 656, 741 P.2d 154].) We look first to the words themselves to determine intent, and no interpretation is necessary if they are clear and unambiguous. (Id. at pp. 1007-1008.) But when the intent is not clear from the statute itself, "the provision must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." (DeYoung v. City of San Diego (1983) 147 Cal. App.3d 11, 18 [194 Cal. Rptr. 722].)
(3) Moreover, "[w]hen language which is susceptible of two constructions is used in a penal law, the policy of this state is to construe the statute as favorably to the defendant as its language and the circumstance of its application reasonably permit. The defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of a statute." (People v. Overstreet (1986) 42 Cal.3d 891, 896 [231 Cal. Rptr. 213, 726 P.2d 1288].)
(1b) Nevertheless, "15 percent" cannot reasonably be understood to mean a number somewhere between 15 and 16 percent. If the Legislature had intended the term to refer to a range of values, it surely would have said so. But in that event, additional language would have been necessary to identify which of several figures within the range was the correct one for calculating custody credits. There being no such language, we will not presume the Legislature intended to leave the term uncertain in favor of giving it a single unambiguous meaning. Therefore, we conclude "15 percent" means exactly 15.00 percent and nothing more.
It follows that Ramos was properly awarded 31 days of conduct credit because that is the greatest whole number of days which does not "exceed 15[.00] percent of the actual period of confinement...." (§ 2933.1, subd. (c).) This interpretation is also consistent with the manifest purpose of section 2933.1 to limit the presentence conduct credits for violent felons. *817 Section 2933.1 was adopted as an urgency statute "[i]n order to protect the public from dangerous repeat offenders who otherwise would be released...." (Stats. 1994, ch. 713 (Assem. Bill No. 2716), § 2.) We cannot ignore this language even though our approach makes a difference of only one day in a twenty-two-year prison sentence.
Finally, whatever the proper interpretation of section 2933.1, Ramos argues its limitations do not apply to his eight-month consecutive sentence for possession of a controlled substance, which is not a violent felony within the meaning of section 667.5. Instead, he maintains his conduct credits for that offense must be calculated according to the more liberal provisions of section 4019. However, the language of section 2933.1 does not support his position. The statute applies "[n]otwithstanding Section 4019 or any other provision of the law" and limits to 15 percent the maximum number of conduct credits available to "any person who is convicted of a felony offense listed in Section 667.5." That is, by its terms, section 2933.1 applies to the offender not to the offense and so limits a violent felon's conduct credits irrespective of whether or not all his or her offenses come within section 667.5. The Legislature could have confined the 15 percent rule to the defendant's violent felonies if that had been its intention. (Cf. § 2900.5, subd. (b), limiting presentence credits to the custody "attributable to proceedings related to the same conduct for which the defendant has been convicted.")
In summary, we conclude the trial court correctly calculated and applied Ramos's presentence conduct credits to comply with but not exceed the 15.00 percent limitation of section 2933.1.

III. Direct Restitution.[*]
.... .... .... .... .... .... .... .

IV. Conduct Credits  Equal Protection.

(4a) After our opinion was filed in this case addressing the three previous issues, we received a letter from the Los Angeles County Public Defender disputing not our interpretation of the 15 percent limitation but its application, claiming the method we used to calculate presentence conduct credits violates equal protection principles in that it causes a person such as Ramos, who is confined in the county jail prior to sentencing, to earn fewer conduct credits than a person who receives the same sentence but serves the entire term in prison. Ramos subsequently petitioned for a rehearing on the *818 ground his sentence was unauthorized for this reason. We granted the petition and now consider this additional contention in light of the parties' supplemental briefing on the matter.
According to Ramos, the disparity arises because the conduct credits one earns in prison are based on the total term of imprisonment whereas, under the method employed here, credits earned prior to sentencing are based on the actual period of confinement. Using Ramos's example, a person sentenced to 2 years (730 days) who serves his or her entire term in prison is eligible for release after 621 days (730 - 15 percent). A person who spends a year in the county jail prior to receiving the same 2-year sentence earns 54 days of presentence conduct credits (365 x 15 percent) leaving 311 days left to be served in prison (730 - (365 + 54)). Reducing the remaining term by 15 percent yields 265 days (311 - 15 percent), meaning the person spends a total of 630 days in custody (365 + 265), 9 more days than the person who spends no time in county jail. This disparity violates his right to equal protection, Ramos urges, because it treats him less favorably than someone who is able to post bail.
Ramos proposes an interpretation of section 2933, subdivision (c) which would avoid this disparity by calculating presentence conduct credits based not on the actual number of days spent in jail awaiting trial but on the term, including credits, to which a county jail detainee would need to have been sentenced in order to be released in that time. Under this method, using the same example, a person would be eligible for release in 365 days who had been sentenced to 429 days (365 ÷ .85). The remaining prison term of 301 days (730 - 429), reduced by 15 percent, is 256 days (301 - 15 percent). This person then, like the one who serves his or her entire term in prison, would spend a total of 621 days in confinement (365 + 256).[9] Ramos maintains the statute envisions use of this method both because the Legislature intended such a result and because the federal and state Constitutions require it. Since he spent 213 days in county jail prior to sentencing, he maintains he is entitled to credit for 250 days against his subsequent prison term (213 ÷ .85), a figure which reflects 37 days of presentence conduct credits rather than the 31 days he was awarded (213 x .15).

A. Presentence and Prison Credits.

Section 2933.1 governs the calculation of conduct credits for a person convicted of a violent felony as defined in section 667.5 (hereafter a violent *819 felon). Subdivision (a) of section 2933.1 provides that such a person "shall accrue no more than 15 percent of worktime credit, as defined in Section 2933." Section 2933 applies generally to persons convicted of a crime and sentenced to prison for a determinate term. It states in part: "For every six months of full-time performance in a credit qualifying program, as designated by the director, a prisoner shall be awarded worktime credit reductions from his or her term of confinement of six months. A lesser amount of credit based on this ratio shall be awarded for any lesser period of continuous performance...." (§ 2933, subd. (a).) Thus a person imprisoned for a crime other than a violent felony (hereafter a nonviolent felon) earns "one-for-one" worktime credits for each day he or she is enrolled full time in a qualifying work, training or education program.
Accordingly, section 2933.1, subdivision (a) might be construed to mean a violent felon earns 15 percent of a day of credit for each day he or she is enrolled in a prison work program. But section 2933 speaks of a "worktime credit reduction[] ... from [the] term of confinement." This language would indicate the term to which the person was sentenced will be reduced by 15 percent to determine the number of days he or she is required to serve.[10] Since the parties appear to agree, we proceed on the assumption, without necessarily deciding, that this latter method is the correct one for calculating prison conduct credits for a violent felon.
Section 2933.1, subdivision (c), on the other hand, provides that the credits earned by a violent felon while held in a presentence detention facility "shall not exceed 15 percent of the actual period of confinement. ..." (Italics added.) This provision plainly looks to the number of days an unsentenced defendant actually spends in local custody rather than to some hypothetical term of confinement.
The distinction between credits for sentenced felons based on the term of imprisonment and credits for unsentenced detainees based on the actual period of confinement appears in other contexts as well. Presentence conduct credits for nonviolent felons are governed by section 2900.5 which states in part: "(a) In all felony and misdemeanor convictions, ... when the defendant has been in custody, including, but not limited to any time spent in jail, ... all days of custody of the defendant, ... including days credited to the period of confinement pursuant to section 4019, shall be credited upon *820 his or her term of imprisonment...." Section 4019, in turn, provides that a presentence detainee is entitled to one day of worktime credit and one day of goodtime credit for each six-day period he or she is confined in a local detention facility prior to sentencing. (§ 4019, subds. (b) and (c).)[11] These provisions sometimes have been said to provide for a "one-third reduction" for work performance and good behavior. (See, e.g., People v. DeVore (1990) 218 Cal. App.3d 1316, 1319 [267 Cal. Rptr. 698]; People v. McCutcheon (1986) 187 Cal. App.3d 552, 559 [232 Cal. Rptr. 159]; People v. Caruso, supra, 161 Cal. App.3d at p. 16; People v. Rosaia (1984) 157 Cal. App.3d 832, 847 [203 Cal. Rptr. 856].) However, the statute was amended in 1982 to provide further that "if all days are earned under this section, a term of six days will be deemed to have been served for every four days spent in actual custody." (§ 4019, subd. (f).) Thus it is more accurate to say a detainee earns conduct credits based on the actual period of presentence confinement than it is to speak in terms of a one-third reduction from a term of imprisonment. (See, e.g., People v. King (1992) 3 Cal. App.4th 882, 885 [4 Cal. Rptr.2d 723]; People v. Browning (1991) 233 Cal. App.3d 1410, 1412-1413 [285 Cal. Rptr. 216]; People v. Bravo (1990) 219 Cal. App.3d 729, 732-735 [268 Cal. Rptr. 486]; People v. Smith (1989) 211 Cal. App.3d 523, 527 [259 Cal. Rptr. 515].) By way of contrast, section 667, subdivision (c)(5), which limits prison conduct credits for persons convicted under the "Three Strikes" law, provides that such credits "shall not exceed one-fifth of the total term of imprisonment imposed. ..." (Italics added.) And section 2931, governing prison credits for persons who committed crimes before 1983, grants the Department of Corrections the authority to "reduce the term prescribed ... by one-third for good behavior and participation...." (§ 2931, subd. (a), italics added.)
In sum, we conclude our interpretation of section 2933.1 does indeed calculate a violent felon's presentence conduct credits based on a slightly less generous formula than is used to determine his or her prison conduct credits. But we reject Ramos's assertion that this interpretation therefore contravenes the intent of the statute. On the contrary, the interpretation is consistent not only with the unambiguous language of the statute itself but with other expressions of legislative intent as well. Assembly Member *821 Richard Katz, the author of the bill enacting section 2933.1, explained the purpose of section 2933.1 in a letter to the Governor as follows:
"In enacting Penal Code section 2933.1, it is my intent and that of the Legislature to ensure that the maximum fifteen percent reduction apply to a defendant's entire term of imprisonment, so long as the defendant has been convicted of at least one violent felony, as specified in subdivision (c) of Section 667.5.
(5) (See fn. 12.) "It is further my intent, and that of the Legislature, in enacting Penal Code section 2933.1 to ensure that the maximum fifteen percent reduction apply with equal force and effect to actual custody served prior to imposition of the term of imprisonment for a violent felony, as specified, pursuant to Penal Code section 2900.5." (Assem. J. (1993-1994 Reg. Sess.) p. 9353, italics added.)[12] The remaining question then is whether the resulting disparity violates equal protection principles.

B. Equal Protection.

(6) "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." (In re Eric J. (1979) 25 Cal.3d 522, 530 [159 Cal. Rptr. 317, 601 P.2d 549].)
"`The constitutional guaranty of equal protection of the laws has been judicially defined to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness. [Citations.] The concept recognizes that persons similarly situated with respect to the legitimate purpose of the law receive like *822 treatment, but it does not ... require absolute equality. [Citations.] Accordingly, a state may provide for differences as long as the result does not amount to invidious discrimination. [Citations.]' [Citation.]"
"... `[T]he Legislature may make a reasonable classification of persons and pass special legislation applying to certain classes. The classification cannot be arbitrary, but must be based on some difference in the classes having a substantial relation to a legitimate objective to be accomplished. [Citation.] The presumption is in favor of the classification and will not be rejected unless plainly arbitrary. [Citation.]' [Citation.]" (People v. Heard (1993) 18 Cal. App.4th 1025, 1029-1030 [22 Cal. Rptr.2d 684]; People v. Eddy (1995) 32 Cal. App.4th 1098, 1108-1109 [38 Cal. Rptr.2d 563].)
(4b) Numerous cases have held that various classes of detainees are not similarly situated with respect to the award of conduct credits. In a context very similar to the one before us, for example, a nonviolent felon earns fewer conduct credits during presentence confinement in a local detention facility (§§ 2900.5, 4019) than he or she does once sentenced to state prison and enrolled in a qualifying work program (§ 2933). The courts have uniformly rejected equal protection claims challenging this disparity, finding that pretrial detainees and state prison inmates are not similarly situated for purposes of the statutes (People v. Caddick (1984) 160 Cal. App.3d 46, 53 [206 Cal. Rptr. 454]; In re Cleaver (1984) 158 Cal. App.3d 770, 773-774 [204 Cal. Rptr. 835]; People v. Rosaia, supra, 157 Cal. App.3d at p. 845; People v. Davis (1984) 154 Cal. App.3d 253, 255 [201 Cal. Rptr. 422]), or alternatively that the disparate treatment is justified by the state's interest in rehabilitating convicted felons (People v. DeVore, supra, 218 Cal. App.3d at pp. 1319-1320; People v. Poole (1985) 168 Cal. App.3d 516, 524-526 [214 Cal. Rptr. 502]; People v. Ross (1985) 165 Cal. App.3d 368, 377 [211 Cal. Rptr. 595]; People v. Valladares (1984) 162 Cal. App.3d 312, 320-321 [208 Cal. Rptr. 604]; People v. Caruso, supra, 161 Cal. App.3d at pp. 19-20).
"While state prison inmates are conclusively guilty and presumptively in need of rehabilitation, pretrial felony detainees are presumptively innocent and may not require rehabilitation. [Citations.] The difficulty of establishing prison-style work programs in county jails for pretrial detainees  who may make bail, or have work programs interrupted by court appearances and other obligations  further distinguishes pretrial detainees from state prisoners and justifies the slightly disparate scheme for awarding conduct credits to the former class." (People v. Heard, supra, 18 Cal. App.4th at pp. 1030-1031; People v. Caddick, supra, 160 Cal. App.3d at p. 53.)
Moreover, all these decisions distinguished People v. Sage (1980) 26 Cal.3d 498 [165 Cal. Rptr. 280, 611 P.2d 874], the one case upon *823 which Ramos relies for his position in the present case. Sage held equal protection principles require the award of presentence conduct credits to pretrial detainee felons on the same basis as pretrial detainee misdemeanants (§ 4019)[13] and state prison inmates (§ 2931). (26 Cal.3d at pp. 507-508.) The following discussion of Sage in People v. DeVore, supra, 218 Cal. App.3d 1316 is representative:
"The first distinction between Sage and the instant case is that appellant demands credits for work performance under section 2933, rather than 2931. Section 2933 credits `must be earned' and are available only to prison inmates who are assigned to a full-time credit qualifying program. (§ 2933, subds. (a), (b).) A prisoner who does not participate in a qualified work program is treated in exactly the same manner as a detainee/felon. (§ 2933, subd. (a) [nonparticipating prisoners entitled to one-third reduction per § 2931]....) Thus, not all presentence felons who make bail are automatically better off than appellant. Unlike Sage, the challenged classification herein is not neatly divided between those who can afford bail and those who cannot. It seems clear that the discrimination complained of does not divide those who make bail from those who cannot, but those who participate in prison rehabilitation programs from those who do not. [Citation.]
"The legislative intent in enacting section 2933 cited the same factors that were discussed in Sage, and added the desire that prisons become more self-sufficient through the establishment of work programs. [Citation.] The legislative justification for this differential treatment of prisoners cannot be summarily rejected here, as it was in Sage, because the factors do not apply to misdemeanants here. The Supreme Court has subsequently cited Poole, Ross, Valladares, and Caruso, supra, with apparent approval for the conclusion that the state's interest in rehabilitation and the difficulty in establishing prison-style work programs in county jails justify the disparate application of presentence and postsentence work credits. (People v. Waterman (1986) 42 Cal.3d 565, 570....) We conclude that appellant's argument is incorrect, and we adhere to the existing authority on this issue." (218 Cal. App.3d at p. 1320, fn. omitted.)
Similarly, the courts have upheld other statutory schemes which treat detainees differently when it comes to conduct credits. It does not offend equal protection principles to award fewer credits (or none at all) to California Rehabilitation Center (CRC) committees (Welf. & Inst. Code, § 3201) than to state prison inmates (§ 2933). (People v. Eddy, supra, 32 Cal. App.4th *824 at pp. 1101-1110; People v. Madison (1993) 17 Cal. App.4th 783, 789 [22 Cal. Rptr.2d 157]; People v. Abdullah (1992) 6 Cal. App.4th 1728, 1734 [9 Cal. Rptr.2d 131]; People v. Miller (1991) 233 Cal. App.3d 1551, 1554-1556 [285 Cal. Rptr. 410]; People v. Williams (1991) 232 Cal. App.3d 1643, 1648 [284 Cal. Rptr. 241]; In re Mabie (1984) 159 Cal. App.3d 301, 307-309 [205 Cal. Rptr. 528]; but see People v. Guzman (1995) 40 Cal. App.4th 691, 695 [47 Cal. Rptr.2d 53] [§ 4019 credits available for time spent at CRC after exclusion and prior to sentencing].) Section 667, subdivision (c)(5) does not implicate equal protection by limiting prison credits available to a person convicted under the Three Strikes law. (People v. Spears (1995) 40 Cal. App.4th 1683, 1687-1688 [48 Cal. Rptr.2d 634]; People v. Hamilton (1995) 40 Cal. App.4th 1615, 1619-1620 [47 Cal. Rptr.2d 749]; People v. Applin (1995) 40 Cal. App.4th 404, 407-412 [46 Cal. Rptr.2d 862]; People v. McCain (1995) 36 Cal. App.4th 817, 819-822 [42 Cal. Rptr.2d 779]; People v. Sipe (1995) 36 Cal. App.4th 468, 483-484 [42 Cal. Rptr.2d 266].) Nor does section 4019 insofar as it awards presentence conduct credits in multiples of four days only. (People v. Heard, supra, 18 Cal. App.4th at pp. 1028-1031; People v. Jacobs (1992) 6 Cal. App.4th 101, 102-104 [7 Cal. Rptr.2d 781]; People v. King, supra, 3 Cal. App.4th at pp. 886-887.) And the same is true of the denial of credits to persons in certain types of residential rehabilitation facilities (People v. Moore (1991) 226 Cal. App.3d 783 [277 Cal. Rptr. 82]; People v. Darnell (1990) 224 Cal. App.3d 806 [274 Cal. Rptr. 110]; People v. Palazuelos (1986) 180 Cal. App.3d 962 [226 Cal. Rptr. 31]; People v. Broad (1985) 165 Cal. App.3d 882 [211 Cal. Rptr. 679]; but see People v. Mobley (1983) 139 Cal. App.3d 320 [188 Cal. Rptr. 583]), to mentally disordered sex offenders committed to a state hospital (In re Huffman (1986) 42 Cal.3d 552, 563 [229 Cal. Rptr. 789, 724 P.2d 475]; People v. Sage, supra, 26 Cal.3d at p. 498; People v. Saffell (1979) 25 Cal.3d 223, 233-235 [157 Cal. Rptr. 897, 599 P.2d 92]), and to persons subject to restrictive forms of pretrial release (People v. Lapaille (1993) 15 Cal. App.4th 1159 [19 Cal. Rptr.2d 390] [conduct credits]; People v. Cook (1993) 14 Cal. App.4th 1467 [18 Cal. Rptr.2d 362] [same]).
As in the case of a nonviolent felony, a violent felon confined in a local detention facility prior to sentencing is not similarly situated for equal protection purposes to one serving a term in state prison and enrolled in a qualifying work program. (People v. Applin, supra, 40 Cal. App.4th at p. 411; People v. Heard, supra, 18 Cal. App.4th at pp. 1030-1031; People v. Caddick, supra, 160 Cal. App.3d at p. 53.) Consequently, we reject Ramos's equal protection claim.

DISPOSITION
The judgment is modified to strike the personal use enhancement imposed in count 9. The matter is remanded to the trial court for resentencing with *825 respect to the great bodily injury enhancement in count 9. In all other respects, the judgment is affirmed.
Dibiaso, J., and Harris, J., concurred.
A petition for a rehearing was denied November 19, 1996, and appellant's petition for review by the Supreme Court was denied February 5, 1997. Mosk, J., was of the opinion that the petition should be granted.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I. and III.
[1] The robberies were charged in the information under Penal Code section 212.5, subdivision (b). An amendment to section 212 effective January 1, 1995, moved the provision relating to second degree robbery from subdivision (b) to subdivision (c). (Stats. 1994, ch. 919, § 1.)

All future undesignated statutory references are to the Penal Code.
[2] Ramos appealed from "the judgment of conviction and sentencing" but did not file a certificate of probable cause as is generally required for an appeal following a guilty plea. (§ 1237.5; Cal. Rules of Court, rule 31(d).) A certificate of probable cause is not required, however, if the appeal is based solely upon grounds occurring after entry of the plea which do not challenge its validity, and the notice of appeal states that it is based upon such grounds. (Cal. Rules of Court, rule 31(d).) We subsequently granted Ramos's motion to amend his notice of appeal to add the following language: "This appeal is also based upon grounds occurring after entry of the plea which do not challenge its validity. These grounds include, but are not limited to, imposition of an unauthorized enhancement for personal firearm use, and improper calculation of appellant's presentence conduct credits pursuant to the recently enacted `15 percent' limitation contained in Penal Code section 2933.1."
[*] See footnote, ante, page 810.
[9] It should be noted the results are not always equal, even under Ramos's method of calculation. For example, a person sentenced to 3 years (1,095 days) who serves the term entirely in prison is eligible for release after 931 days. The same person who spends a year in jail prior to sentencing will be confined for 932 days. The one-day difference results from the method's conversion of percentages to whole numbers, something which occurs once in the first calculation but twice in the second.
[10] For purposes of section 2933 the result is the same whether one-for-one credits are based on the actual period of confinement or on the total term of imprisonment. But there is a difference depending upon which method is used to calculate 15 percent credits. For example, a violent felon sentenced to 1,000 days would have to serve 870 days under the former method but only 850 days under the latter.
[11] Although section 4019, subdivision (b) is often said to refer to "worktime" credits, the term means something different in that context than it does for purposes of section 2933. One-for-one "worktime" credits under section 2933 are awarded for actual full-time performance in a work, training or education program established by the Department of Corrections. (§ 2933, subd. (a).) A detainee earns worktime credits under section 4019, subdivision (b) "unless it appears by the record that the prisoner has refused to satisfactorily perform labor" assigned by the institution. Thus a person can earn full worktime credits in county jail for passive good behavior whereas a prison inmate cannot. (See People v. Caruso (1984) 161 Cal. App.3d 13, 20, fn. 9 [207 Cal. Rptr. 221].)
[12] Statements by individual legislators are not necessarily admissible or entitled to much weight on the question of legislative intent.

"`In construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it. [Citations.] Nor do we carve an exception to this principle simply because the legislator whose motives are proffered actually authored the bill in controversy [citation]; no guarantee can issue that those who supported his proposal shared his view of its compass.' [Citation.] A legislator's statement is entitled to consideration, however, when it is a reiteration of legislative discussion and events leading to adoption of proposed amendments rather than merely an expression of personal opinion. [Citations.] The statement of an individual legislator has also been accepted when it gave some indication of arguments made to the Legislature and was printed upon motion of the Legislature as a `letter of legislative intent.' [Citation.]" (California Teachers Assn. v. San Diego Community College Dist. (1981) 28 Cal.3d 692, 699-700 [170 Cal. Rptr. 817, 621 P.2d 856]; accord, Roberts v. City of Palmdale (1993) 5 Cal.4th 363, 377-378 [20 Cal. Rptr.2d 330, 853 P.2d 496].) Assembly Member Katz's letter appears to fall within this latter category inasmuch as he was granted unanimous consent to print it in the Assembly Journal. (Assem. J., supra.)
[13] Section 4019 was subsequently amended to codify the result in Sage. (People v. Rosaia, supra, 157 Cal. App.3d at p. 843.)