Filed 1/16/15  P. v. Davidson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE, | C074922 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F04935) |
| v. | |
| CARRINGTON DARNELL DAVIDSON, | |
| Defendant and Appellant. | |

A jury convicted defendant Carrington Darnell Davidson of the attempted murder of Shamira Tucker (count 1; Pen. Code, §§ 664, 187, subd. (a)),[1] assault with a firearm on Tucker (count 2; § 245, subd. (a)(2)); first degree burglary of the residence of Darius Brazell (count 3; § 459); being a felon in possession of a firearm (count 4; § 29800, subd. (a)(1)); discharging a firearm at an inhabited dwelling house (count 5; § 246); and discharging a firearm in a grossly negligent manner (count 6; § 246.3).[2]  As to count 1,

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  Before the case went to the jury, defendant stipulated to the felonies underlying count 4.

the jury found the attempted murder was committed willfully, deliberately, and with premeditation, and defendant personally used a firearm in its commission (§ 12022.53, subd. (c)). As to count 2, the jury found defendant personally used a firearm (§ 12022.5, subd. (a)).[3]

In a bifurcated proceeding, the trial court found that defendant had a prior strike, a prior serious felony conviction, and two prior prison terms. (§§ 667, subds. (b)-(i), 1170.12; § 667, subd. (a); § 667.5, subd. (b).) The court denied defendant's motions for new trial and to dismiss the strike.

The trial court sentenced defendant on count 1 to an indeterminate state prison term of 14 years to life, plus 25 years for the firearm enhancement, all to run consecutive to the determinate term on the remaining counts. The court imposed an aggregate determinate term of 27 years 4 months on those counts, consisting of eight years (the upper term, doubled for the strike) on count 2, plus 10 years for the firearm enhancement; three years four months (the middle term, doubled) on count 5; five years for the prior serious felony conviction enhancement; and one year for the prior prison term enhancement. The court imposed but stayed sentence on counts 3, 4, and 6. (§ 654.) The court awarded defendant 496 days of presentence custody credit (432 actual days & 64 conduct days).

Defendant contends the trial court erred prejudicially by excluding Tucker's prior felony for purposes of impeachment, and that the court's ruling violated his federal constitutional right to confrontation; so far as his trial counsel failed to object effectually, defendant received ineffective assistance of counsel. We shall reject these contentions.

---

[3] The information also alleged an enhancement for personal use of a firearm as to count 3. (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a)(1).) However, that enhancement did not appear on the verdict form submitted to the jury, and the jury made no finding on it. The Attorney General's contrary assertion is mistaken.

However, defendant also raises claims of sentencing error which the Attorney General correctly concedes. In addition, we have found sentencing problems not raised by the parties.

We shall remand the matter for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Exclusion of Tucker's Prior

The People moved in limine under Evidence Code section 352 to exclude mention of Tucker's 2006 juvenile adjudication for assault with a deadly weapon or force likely to inflict great bodily injury. (§ 245.) Defense counsel sought to use this evidence for impeachment.

The trial court ruled as follows:

". . . It is true that felony prior convictions that involve moral turpitude can be relevant and are therefore admissible for impeachment purposes, but in order to finally find admissibility, the Court must apply the [Evidence Code section] 352 factors. And I have sort of thought about this over the weekend because I was on the fence about it. One of the factors I'm to consider with regard to impeachment of felony priors is its remoteness. And the remoteness, that factor deals with, as the case law says, a pattern of criminality. What I understand is this is the person's only criminal history between the time of the commission of the offense and now.

"As I said earlier, I think, in one of the other rulings that ten years is about my usual cutoff, and that is true of adult felony priors. Although I agree this is -- this crime does involve moral turpitude, it is my feeling that applying [Evidence Code section] 352, a seven- or eight-year gap between a juvenile prior and a current time frame is a sufficient time gap in my mind to sort of wash that prior, particularly since the prior was committed when the person was a juvenile.

3

"I don't know, did we figure out the age? I guess she was 17 at the time. [Defense counsel] pointed out she was on the edge as he said. She was 17 at the time. She has spent the rest of her adult life crime free.

"So given the nature of that prior, the fact it was committed as a juvenile is not actually a felony conviction but a sustained petition, applying [Evidence Code section] 352, I'm going to find that the probative value of that prior, which is slight, its outweighed by the possibility that that impeachment under that circumstance could be used to inappropriately prejudice that person's credibility.

"Doing a crime at age 17 and then staying crime free for seven or eight years after that, I think the evaluation or the usefulness of that prior to demonstrate credibility is largely washed away. And therefore under [Evidence Code section] 352, I find there is a probability that the prior would be used inappropriately. It would be a substantial possibility for prejudice, and that clearly, in my view, outweighs any probative value that it would have. So I'm going to exclude the use of that particular prior on that witness for all those reasons."

**Trial Evidence**

*Prosecution Case*

In July 2012, Tucker and her partner, Monica Carter, lived in an apartment complex off Mack Road in Sacramento. Tucker's cousin, Malika, also lived in the complex, directly above the apartment of Connie Vallejo.[4]

Early in July 2012, Tucker and her daughter were at Malika's apartment for a birthday party. Tucker's daughter mistakenly tried to enter Vallejo's apartment. Vallejo's five- or six-year-old granddaughter pushed Tucker's daughter out. Tucker, who

---

[4] Defendant testified that Vallejo's daughter, Alisha Hunt, was the mother of defendant's children, and that Vallejo had custody of the children.

4

saw the push, told Vallejo's granddaughter there was no need to do that. Vallejo came to the door and exchanged words with Tucker.

Two or three weeks later, Vallejo's daughter, Alisha Hunt, accused Tucker of putting her hands on Hunt's child and challenged Tucker to fight. They fought briefly. Afterward, Tucker thought the matter was over.

On July 24, 2012, Tucker, her friend Sparkle Johnson, and others were sitting outside Johnson's apartment in the complex. Hunt walked by them and went upstairs. Five or 10 minutes later, she came back with defendant, who wore a red baseball cap.

After Hunt said something to defendant, he asked Tucker if she had hit his daughter. Tucker, who did not know defendant or what he was talking about, said "No." They exchanged a few words; then defendant punched her in the face, knocking her into a wall.[5]

Defendant pulled out a gun and started shooting at Tucker. She ran into Johnson's apartment, but he followed her there, put his gun hand through the front door, and continued to shoot as Tucker hid behind a table; Johnson's boyfriend, her four-year-old daughter, and another woman were also in the apartment. Hearing gunshots outside, Tucker realized defendant had left.

Carter was in the apartment she shared with Tucker when she heard the gunshots. She headed toward Johnson's apartment looking for Tucker. A Black man wearing a white T-shirt and a red cap moved quickly past her. He jumped into a car driven by Connie Vallejo, which sped away.

Police came to the complex and interviewed Tucker and Johnson. Based on what they were told, they then went to Vallejo's apartment, looking for her or Hunt. Vallejo was not home. The police found Hunt trying to jump over the back fence.

---

[5] Tucker believed defendant thought she was a boy because of how she was dressed. She and others there told him she was female.

The police found a shell casing inside the front door of Johnson's apartment and three others on the walkway leading to it. They also found a bullet hole inside the apartment.

Calls made from defendant's cell phone shortly after the incident showed that the phone traveled from the Mack Road area toward downtown Sacramento. At 6:06 p.m., a call was made using a cell tower on J Street.

An Amtrak surveillance video showed defendant at the downtown train station at 6:11 p.m. A ticket for a 6:15 p.m. train to Richmond was purchased in his name.

Tucker and Johnson identified defendant in a photo lineup as the shooter.

**Defense Case**

Defendant, the only defense witness, testified that he came from his home in Oakland to Sacramento by train on July 24, 2012, to visit his daughters and take them to the state fair. Vallejo's niece drove them all there. Vallejo picked them up at the fair between 4:00 and 5:00 p.m. and took them back to her apartment, then drove defendant to the train station.

Defendant claimed he did not know Tucker, although he had seen her at the apartment complex on prior visits. He had never heard that she hit his daughter. He had heard from Vallejo that Tucker and Hunt had had a fight, but did not learn what it was about and thought it was settled. He did not see Hunt at any time in 2012; they were not on speaking terms. No one asked him to come to the complex and resolve anything. He did not speak to Tucker on July 24, 2012. He did not have a gun. He did not hit or shoot anyone.

Defendant initially told the detective who interviewed him that he did not come to Sacramento in July 2012 because he thought the detective was questioning him about Vallejo or Hunt getting hurt in a shooting and he feared he might be blamed for it. Eventually, the detective told defendant that he could be placed in Sacramento on the date of the crime by evidence from cell towers, GPS, cameras in the apartment complex

6

and the Amtrak station, and eyewitnesses; the detective also showed him the photo lineup and said someone had circled his picture. However, defendant never told the detective that he committed any crime.

Defendant admitted two prior convictions for crimes involving moral turpitude.

## DISCUSSION

### I

Defendant contends the trial court erred prejudicially and violated his federal constitutional right to confrontation by preventing him from impeaching Tucker with her juvenile adjudication for felony assault. He also contends that so far as trial counsel failed to object to the court's ruling, counsel rendered ineffective assistance. We disagree.

A felony juvenile adjudication is not a conviction within the meaning of Evidence Code section 788, but the underlying conduct may be used for impeachment if the offense was a crime of moral turpitude, subject to the constraints of Evidence Code section 352. (*People v. Wheeler* (1992) 4 Cal.4th 284, 295; *People v. Lee* (1994) 28 Cal.App.4th 1724, 1740.)

We review the trial court's rulings under Evidence Code section 352 for abuse of discretion. (*People v. Lightsey* (2012) 54 Cal.4th 668, 714 (*Lightsey*).) We see none here.

As the trial court found, Tucker's juvenile adjudication was not recent and was not followed by any adult offense; thus it had little probative value as to her credibility. (See *Lightsey, supra*, 54 Cal.4th at p. 714; *People v. Feaster* (2002) 102 Cal.App.4th 1084, 1094.) The court could reasonably determine that the small probative value of this evidence was outweighed by its potential to waste time, create confusion, and prejudice the jury unfairly against Tucker. This finding was well within the court's discretion.

But even if the evidence should have been admitted, its exclusion was harmless. Tucker's story was corroborated by other evidence, including Johnson's eyewitness

7

identification of defendant. But the parts of defendant's story that pointed to his innocence were uncorroborated. He admitted two convictions for crimes involving moral turpitude. He also admitted lying to the police about not going to Sacramento in July 2012 until confronted with proof that he had done so. In light of that evidence, impeachment of Tucker for an eight-year-old juvenile assault would have had no reasonable likelihood of producing a more favorable outcome for defendant.

Defendant's assertion that the trial court's ruling violated his federal constitutional right to confrontation is baseless. Application of the ordinary rules of evidence does not generally infringe impermissibly on a defendant's constitutional rights. (*People v. Cudjo* (1993) 6 Cal.4th 585, 610-611.) In any event, defense counsel's comprehensive cross-examination of Tucker on every aspect of the case consumes over 60 pages of reporter's transcript. (RT 139-200) Defendant was not deprived of the right to confront Tucker. Therefore, regarding defendant's claim of ineffective assistance of counsel, the claim lacks merit because defendant has not shown that his counsel was deficient.

*Davis v. Alaska* (1974) 415 U.S. 308 [39 L.Ed.2d 347], which defendant improperly cites only in his reply brief, is inapposite. The Supreme Court held there that the defendant's right to confrontation was impaired because he was not allowed to show that a witness's present vulnerable status as a juvenile probationer might cause bias and motivate him to identify the defendant falsely. (*Id.* at pp. 315-320.) Tucker's long-past juvenile adjudication did not put her in a vulnerable position or create any grounds for bias against defendant.

## II

Defendant contends his conviction for negligently discharging a firearm (count 6) must be reversed because that offense is necessarily included within the offense of discharging a firearm at an inhabited dwelling (count 5), of which he was also convicted. (*People v. Ramirez* (2009) 45 Cal.4th 980, 990.) The Attorney General agrees, as do we. We reverse defendant's conviction on count 6.

8

# III

Defendant contends his conviction for assault with a firearm (count 2) must be stayed under section 654 because it was part of an indivisible course of conduct with his crime of attempted murder (count 1) and had the same intent and objective. Alternatively, he contends that the sentences on those counts should run concurrent.[6] The Attorney General correctly concedes that defendant's conviction on count 2 must be stayed under section 654.

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on another point in *People v. Correa* (2012) 54 Cal.4d 331, 334.)  The trial court's determination as to whether the defendant had more than one intent and objective is a question of fact, and we review the court's ruling for substantial evidence.  (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1252-1253.)

The trial court made no express factual finding to explain why it thought section 654 did not apply to count 2.  (Possibly the court omitted such a finding because it imposed an indeterminate sentence on count 1 and then made count 2 the principal determinate term.)[7]  But, assuming the court impliedly found that counts 1 and 2 involved

---

[6]  Where section 654 applies to one of two counts, the trial court may not sentence concurrently on those counts.  Imposing sentence on both counts, even if run concurrent, is an implied finding of multiple intents or objectives.  (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468; see *In re Wright* (1967) 65 Cal.2d 650, 654-655.)

[7]  The trial court found count 2 was properly run consecutive to count 1 because the crimes were committed at different places and times:  "[T]he victim did run from the scene in an attempt to escape and sought refuge in her [*sic*; Johnson's] apartment where

9

separate intents and objectives, that finding is not supportable. Assaulting Tucker with a firearm was the means by which defendant attempted to carry out his intent to murder her. Therefore, section 654 requires the stay of sentence on count 2.

This conclusion entails further consequences not mentioned by the parties. Because sentence on count 2 must be stayed under section 654, the firearm use enhancement on that count (§ 12022.5, subd. (a)) must also be stayed. (*People v. Bracamonte* (2003) 106 Cal.App.4th 704, 710-713, disapproved on another point in *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1130.) And because a term which is stayed under section 654 cannot be the principal determinate term, the trial court will have to designate count 5, the only remaining unstayed determinate count, as the principal term and recalculate the determinate sentence accordingly. (See *People v. Miller* (2006) 145 Cal.App.4th 206, 215-216 [under § 1170.1, subd. (a), principal term must be longest term actually imposed, not longest term potentially available under applicable sentencing triads].)

## IV

Defendant contends the sentence for the firearm use enhancement on count 1 (§ 12022.53, subd. (c)) should be 20 years, not 25 years as the trial court imposed. The Attorney General agrees. So do we.

Section 12022.53, subdivision (c), provides: "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a)[8], . . . shall be punished by an additional and consecutive term of imprisonment in the state prison for 20 years."

---

the defendant followed and continued to shoot at her." Since we are directing sentence on count 2 to be stayed under section 654, we need not decide whether the court was correct on this point.

**8** Attempted murder is specified in section 12022.53 subdivision (a)(1) and (a)(18).

Because the trial court's oral sentencing and the abstract of judgment show the term for this enhancement as 25 years, the judgment must be modified on resentencing to reduce the term to 20 years.

V

Lastly, defendant contends he is entitled to three additional days of presentence custody credit. The Attorney General calculates that defendant is actually entitled to one additional day. In his reply brief, defendant concedes that the Attorney General is correct (though, oddly, he repeats his original claim in his argument heading). We agree with the Attorney General.

The trial court awarded defendant 496 days of presentence custody credit (432 actual days & 64 conduct days), based on the calculation that the period of time from the date of defendant's arrest through the date of sentencing equaled 432 days. However, the date of his arrest was July 26, 2012, and the date of his sentence was October 1, 2013, a period of 433 days.

Because defendant's presentence conduct credits are calculated under section 2933.1, he is entitled to 15 percent conduct credit, which when multiplied by 433 produces a fractional sum (433 multiplied by 0.15 equals 64.95). Fractions of days are not recognized in calculating credits. (*People v. Ramos* (1996) 50 Cal.App.4th 810, 816.) Thus, the recalculation of defendant's actual days of presentence custody does not increase the number of days of conduct credit he is entitled to. Therefore, defendant should be awarded one additional day of presentence custody credit, or 497 days. (§§ 2900.1, 2900.5, subds. (a), (d); *People v. Buckhalter* (2001) 26 Cal.4th 20, 23, 30-31.)

11

## DISPOSITION

Defendant's convictions are affirmed, except his conviction on count 6, which is reversed.  The matter is remanded to the trial court for resentencing pursuant to parts II through V of the Discussion.

                                                     BLEASE             , Acting P. J.

We concur:

       BUTZ              , J.

       MAURO           , J.