Filed 11/26/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re MOHAMMAD MOHAMMAD<br><br>on<br><br>Habeas Corpus. | B295152<br><br>(Los Angeles County<br>Super. Ct. No.<br>BH011959) |

ORIGINAL PROCEEDINGS in habeas corpus. Superior Court of Los Angeles County, William C. Ryan, Judge. Petition granted.

Michael Satris, under appointment by the Court of Appeal, for Petitioner.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Phillip J. Lindsay, Senior Assistant Attorney General, Amanda J. Murray, Supervising Deputy Attorney General, and Charles Chung, Deputy Attorney General, for Respondent.

In this proceeding challenging an aspect of regulations promulgated to implement the Public Safety and Rehabilitation Act of 2016 (Proposition 57), we give effect to the oft-repeated maxim that the best and most reliable indicator of the intended purpose of a law is its text. (*National Federation of Independent Business v. Sebelius* (2012) 567 U.S. 519, 544; *West Virginia University Hospitals, Inc. v. Casey* (1991) 499 U.S. 83, 98; *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 933 [the enacted text is typically the best and most reliable indicator of the intended purpose of constitutional provisions and statutes, including those adopted via voter initiative] (*California Cannabis*).)

## I.  BACKGROUND

On January 20, 2012, petitioner Mohammad Mohammad pled no contest to nine counts of second degree robbery (Pen. Code, § 211), which are violent felonies under Penal Code section 667.5, subdivision (c),[1] and six counts of receiving stolen property (Pen. Code, § 496, subd. (a)), which are nonviolent felonies under the same statutory definition.  The trial court designated one of the receiving stolen property counts of conviction (count 11) as Mohammad's principal sentencing term, and ordered the sentences imposed for the remaining convictions to run

---

[1]     "Penal Code section 667.5, subdivision (c) defines 23 criminal violations, or categories of crimes, as violent felonies— including murder, voluntary manslaughter, any robbery, kidnapping, various specified sex crimes, and other offenses."  (*In re Edwards* (2018) 26 Cal.App.5th 1181, 1188, fn. 3 (*Edwards*).)

2

consecutively as subordinate terms.  Mohammad's aggregate sentence was 29 years in prison.

Four years later, on November 8, 2016, California voters approved Proposition 57.  The proposition added section 32, subdivision (a) to Article I of California's Constitution (hereafter "section 32(a)"), and it reads:  "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term of his or her primary offense."  (§ 32(a)(1).)  The newly enacted constitutional provision further states "the full term for the primary offense means the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence."  (§ 32(a)(1)(A).)  Proposition 57 directed the Department of Corrections and Rehabilitation (CDCR) to adopt regulations "in furtherance of these provisions" and to "certify that these regulations protect and enhance public safety."  (Cal. Const., art. I, § 32, subd. (b).)

After CDCR encountered problems with an initial set of implementing regulations it promulgated (see generally *Edwards*, *supra*, 26 Cal.App.5th 1181), CDCR promulgated new regulations effective in 2019.  When defining those inmates who will be eligible for early parole consideration, CDCR's rulemaking took a different approach than the constitutional provision— focusing less on the nature of an offense committed by a person (i.e., "a nonviolent felony offense") and more on the person who commits one or more crimes.

Specifically, for determinately sentenced inmates like Mohammad, CDCR's regulations adopt a definition of "nonviolent *offender*" (emphasis ours) to circumscribe eligibility:  "A

3

nonviolent offender, as defined in subsections 3490(a) and 3490(b), shall be eligible for parole consideration by the Board of Parole Hearings under [the early parole consideration regulations at California Code of Regulations, title 15, sections 2449.1 et seq.]." (Cal. Code Regs., tit. 15, § 3491.) Subsection 3490(a), in turn, describes a "'determinately-sentenced nonviolent offender'" by exclusion, not inclusion: "An inmate is a 'determinately-sentenced nonviolent offender' if none of the following are true: [¶] (1) The inmate is condemned to death; [¶] (2) The inmate is currently incarcerated for a term of life without the possibility of parole; [¶] (3) The inmate is currently incarcerated for a term of life with the possibility of parole; [¶] (4) The inmate is currently serving a determinate term prior to beginning a term of life with the possibility of parole; [¶] (5) The inmate is currently serving a term of incarceration for a 'violent felony'; or [¶] (6) The inmate is currently serving a term of incarceration for a nonviolent felony offense after completing a concurrent determinate term for a 'violent felony.'" (Cal. Code Regs., tit. 15, § 3490, subd. (a); see also Cal. Code Regs., tit. 15, § 3490, subd. (c) ["'Violent felony' is a crime or enhancement as defined in subdivision (c) of section 667.5 of the Penal Code"].) The fifth criterion, excluding from the nonviolent offender definition inmates who are currently serving a term of imprisonment for a violent felony, appears to be the operative criterion in this proceeding.[2]

---

[2] Subsection (a)(5) of California Code of Regulations, title 15, section 3490—with its use of the word "currently"—can be read to indicate it was necessary to analyze the particular component of Mohammad's aggregate sentence that he was then serving to determine his eligibility for parole consideration. It is unclear

4

In December 2017, Mohammad requested an early parole hearing pursuant to Proposition 57, arguing he had completed the three-year term of his nonviolent primary offense (receiving stolen property).  CDCR denied the request, relying on a 1996 Court of Appeal decision interpreting a sentencing credit calculation statute to conclude Mohammad should be deemed ineligible for Proposition 57 relief because he was a "violent offender and thereby ineligible for the non-violent parole process."  (See generally *People v. Ramos* (1996) 50 Cal.App.4th 810, 817 ["[B]y its terms, [Penal Code] section 2933.1 applies to the offender not to the offense and so limits a violent felon's conduct credits irrespective of whether or not all his or her offenses come within section 667.5"].)  Mohammad pursued his claim for early parole consideration through all levels of CDCR administrative review, and CDCR's position never wavered.  As CDCR's third-level appeal decision interpreted the department's own regulations, "one of [Mohammad's] non-controlling cases is Second Degree Robbery and this offense makes all of his offenses to be considered violent during this term."

After unsuccessfully seeking habeas corpus relief in the superior court, Mohammad filed a petition for writ of habeas corpus here.  We appointed counsel for Mohammad and issued an order to show cause.

---

whether CDCR undertook such an analysis when declaring him ineligible for early parole consideration, but as we go on to explain, CDCR did determine Mohammad is ineligible for Proposition 57 relief and the Attorney General defends that decision under the aforementioned subsection (a)(5).  We shall proceed on the understanding that CDCR's denial of early parole consideration to Mohammad rested on its determination that he was currently serving a term of incarceration for a violent felony.

5

## II. DISCUSSION

The issue we decide is whether CDCR's implementing regulations that condition eligibility for early parole consideration on status as a "nonviolent offender" are consistent with the constitutional provision that authorizes their promulgation. As we shall explain, they are not. Section 32(a) grants eligibility for early parole consideration to "[a]ny person convicted of a nonviolent felony offense . . . after completing the full term of his or her primary offense," and the use of the singular "a" in a sentence that expressly contemplates criminals would be sent to prison for more than one offense means any nonviolent felony offense component of a sentence will suffice. Mohammad was convicted of a nonviolent offense, among others, and he has completed the full term of his primary offense. That means he is now entitled to early parole consideration notwithstanding CDCR's regulatory exclusion to the contrary— which we shall invalidate. But that does not mean he is entitled to parole. The only certain consequence of our decision is that the Board of Parole Hearings will be busier; they must evaluate the parole worthiness of a category of inmates that CDCR's regulations incorrectly bar from getting before the parole board at all.

### A.  Controlling Legal Principles

"'In order for a regulation to be valid, it must be (1) consistent with and not in conflict with the enabling statute and (2) reasonably necessary to effectuate the purpose of the statute. (Gov. Code, § 11342.2.)'  (*Physicians & Surgeons Laboratories,*

*Inc. v. Department of Health Services* (1992) 6 Cal.App.4th 968, 982[ ]; see *Henning v. Division of Occupational Saf. & Health* (1990) 219 Cal.App.3d 747, 757[ ] (*Henning*).)  Therefore, 'the rulemaking authority of the agency is circumscribed by the substantive provisions of the law governing the agency.' (*Henning*, *supra*, at p. 757.)  '"The task of the reviewing court in such a case is to decide whether the [agency] reasonably interpreted [its] legislative mandate. . . . Such a limited scope of review constitutes no judicial interference with the administrative discretion in that aspect of the rulemaking function which requires a high degree of technical skill and expertise. . . . [T]here is no agency discretion to promulgate a regulation which is inconsistent with the governing statute. . . . Whatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts. . . . Administrative regulations that alter or amend the statute or enlarge or impair its scope are void . . . ." [Citation.]' (*Id.* at pp. 757-758.)" (*Edwards*, *supra*, 26 Cal.App.5th at p. 1189.)

"When construing constitutional provisions and statutes, including those enacted through voter initiative, '[o]ur primary concern is giving effect to the intended purpose of the provisions at issue.  [Citation.]  In doing so, we first analyze provisions' text in their relevant context, which is typically the best and most reliable indicator of purpose.  [Citations.]  We start by ascribing to words their ordinary meaning, while taking account of related provisions and the structure of the relevant statutory and constitutional scheme.  [Citations.]  If the provisions' intended purpose nonetheless remains opaque, we may consider extrinsic sources, such as an initiative's ballot materials.  [Citation.]

Moreover, when construing initiatives, we generally presume electors are aware of existing law. [Citation.] Finally, we apply independent judgment when construing constitutional and statutory provisions. [Citation.]' (*California Cannabis*[, *supra*, ]3 Cal.5th [at pp.] 933-934.)" (*Edwards*, *supra*, 26 Cal.App.5th at p. 1189.)

> ### B. CDCR's Regulations, Which Focus on the Offender and Not the Offense, Are Inconsistent with the Constitution's Text

Section 32(a)(1) makes early parole hearings available to "[a]ny person convicted of a nonviolent felony offense" upon completion of "the full term of his or her primary offense." The phrase "a nonviolent felony offense" takes the singular form, which indicates it applies to an inmate so long as he or she commits "a" single nonviolent felony offense—even if that offense is not his or her only offense. This interpretation is reinforced by the term "primary offense," which demonstrates the provision assumes an inmate might be serving a sentence for more than one offense, i.e., a primary offense and other secondary offenses.

Section 32(a)(1)(A) also defines the "full term for the primary offense" to mean "the longest term of imprisonment imposed by the court for any offense, *excluding the imposition of* an enhancement, [*a*] *consecutive sentence*, or [an] alternative sentence." (Emphasis ours.) Nothing in the Constitution's text suggests a "consecutive sentence" is disqualifying if it is a consecutive term for a violent felony. This further reinforces our conclusion that the text the voters approved when passing Proposition 57 is in no way ambiguous: under sections 32(a)(1) and 32(a)(1)(A), an inmate who is serving an aggregate sentence

8

for more than one conviction will be eligible for an early parole hearing if one of those convictions was for "a" nonviolent felony offense.

Mohammad was convicted of a nonviolent felony offense, receiving stolen property. There is no dispute that his primary offense as the Constitution defines it ("the longest term of imprisonment imposed by the court for any offense") is the principal term prison sentence he received for the count 11 receiving stolen property conviction. Nor is there any dispute that the "full term" in prison for that conviction, "excluding the imposition of an enhancement, consecutive sentence, or alternative sentence" was three years. Therefore, under the plain meaning of section 32(a)(1), Mohammad is eligible for early parole consideration now that he has served three years in prison.

CDCR's regulations dictate a different result, but only by impermissibly defining and limiting the universe of eligible inmates to "nonviolent *offenders*"—a term that does not appear anywhere in section 32(a)(1). The leap taken by CDCR from "a nonviolent felony offense" to a "nonviolent offender" is unjustifiable and inconsistent with the constitutional text. Indeed, the only justification CDCR gave Mohammad for denying relief—reliance on the inapposite *People v. Ramos*, *supra*, 50 Cal.App.4th 810 opinion—is telling. It suggests CDCR's regulatory approach is founded on a misinformed offender-based premise.

Section 32(a)(1) extends early parole consideration to persons "convicted of a nonviolent felony *offense*." Under section 32(a)(1)(A), an inmate who is "convicted of a nonviolent felony offense" not only remains eligible if he or she is sentenced to a

9

consecutive sentence, but in fact, becomes eligible for an early parole hearing *prior to* serving that consecutive sentence. There is just no escaping the conclusion that the text Proposition 57 added to the Constitution obviously contemplates inmates would be sent to prison for more than one criminal offense and would qualify for early parole consideration if one of those offenses was a nonviolent offense. The regulations CDCR promulgated are at war with that textual conclusion and therefore cannot stand.

In arguing the contrary in this proceeding, CDCR largely (and wisely) abandons the *People v. Ramos* rationale it relied on when denying Mohammad administrative relief and instead urges us to consider voter intent as purportedly reflected in the Proposition 57 summary and arguments included in the official ballot pamphlet. We decline. There is nothing ambiguous about what section 32(a)(1) means in this case, and there is accordingly no cause to look beyond the text to ballot materials or other extrinsic evidence of the voters' intent. (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 444-445.)

We do acknowledge, however, that the argument for reaching a different result has some intuitive appeal. It cannot be, the argument goes, that voters intended a defendant who is convicted of more crimes, i.e., both violent and nonviolent felonies, to be eligible for early parole consideration while a defendant convicted of fewer crimes, i.e., the same violent felony but no nonviolent felonies, is not. But we look for evidence of the voters' intent, not intuition, and as our Supreme Court has said repeatedly, the best evidence we have is the text the voters put in the Constitution. (*De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 981; *California Cannabis*, *supra*, 3 Cal.5th at p. 933;

10

*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1037 ["'Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language'"]; see also *People v. Valencia* (2017) 3 Cal.5th 347, 379 (conc. opn. of Kruger, J.) ["California cases have established a set of standard rules for the construction of voter initiatives. 'We interpret voter initiatives using the same principles that govern construction of legislative enactments. [Citation.] Thus, we begin with the text as the first and best indicator of intent'"].) The Constitution's text compels the result we reach, and we are not prepared to declare that result so absurd (see, e.g., *Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 638) as to disregard the Constitution's plain meaning—and, indeed, the Attorney General does not ask us to.

It is also true that our rationale bespeaks a certain self-aware naivete about what most voters do and do not read before going into the voting booth. But that is a necessary ingredient of the initiative mechanism our Constitution permits. If courts are to have a sound, predictable means of adjudicating interpretive questions concerning popularly enacted laws (or any laws for that matter); and if government agencies and Californians are to have a reliable means of discerning their legal rights and obligations; privileging focus-group-tested ballot arguments, incomplete legislative analyses, or intuited voter intentions over clear textual provisions is not the answer. Indeed, that would invite confusion and manipulation of the initiative process. If voters want a different result, the ballot box is open every two years to change what the Constitution now says.

11

In the meantime, it bears emphasizing that Mohammad's case is an unusual one. The court at Mohammad's sentencing designated one of the receiving stolen property convictions—i.e., one of the *non*violent felonies—as the principal term of Mohammad's sentence. Often, however, an inmate convicted of both violent and nonviolent felonies will have the most serious of his or her violent felonies set as the principal term. Thus, the situation we confront in this case when an inmate becomes eligible for early parole consideration before serving time for any of his or her violent felony offenses will not frequently arise.[3]

Furthermore, for those inmates who are eligible for early parole consideration under section 32(a) as we read it today (and as it must be read), the ultimate parole determination to be made on the merits by the Board of Parole Hearings (Board) is not limited in the way that the eligibility determination is. The Board's decision on whether an inmate should be granted parole will take into account the inmate's full criminal history—nonviolent and violent offenses alike—when determining whether the inmate poses a risk to public safety. (Pen. Code, § 3041, subd. (b); Cal. Code Regs., tit. 15, § 2449.4, subd. (b).) So the bottom line consequence of our decision today is that more inmates like Mohammad will receive individualized parole

---

[3]     We also recognize it is possible prosecutors will exercise their charging discretion in multiple offense cases in a way that may affect early parole consideration eligibility. Prosecutorial discretion is an established feature of our criminal justice system (see, e.g., *Davis v. Municipal Court* (1988) 46 Cal.3d 64, 82), and the manner in which prosecutors respond to the consequences of the change in law worked by Proposition 57 is immaterial to the issue we are asked to decide in this appeal.

consideration earlier than they otherwise would have.  If the Board is convinced one of these inmates poses no unacceptable risk to public safety, the Board can approve the inmate for release; if instead there are violent aspects of an inmate's history that were not part of an early parole hearing eligibility determination, the Board can take those into account and issue a parole denial where it deems it prudent.

DISPOSITION

The petition for writ of habeas corpus is granted.  CDCR is directed to treat as void and repeal California Code of Regulations, title 15, section 3490, subdivision (a)(5) and to thereafter make further changes as necessary to ensure its Proposition 57 implementing regulations are consistent with this opinion.  Mohammad shall be evaluated for early parole consideration within 60 days of remittitur issuance.

**CERTIFIED FOR PUBLICATION**


BAKER, Acting P. J.


We concur:


MOOR, J.


KIM, J.


14