Filed 3/28/22  P. v. Arango CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).   This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ADRIAN ARTURO ARANGO, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B307409<br>(Super. Ct. No. 18CR02827)<br>(Santa Barbara County) |

Adrian Arturo Arango, Jr. (Arango) appeals a judgment entered following conviction of second degree robbery, assault with a deadly weapon, making criminal threats (two counts), brandishing a deadly weapon, resisting a police officer, shoplifting, and hit-and-run driving.  (Pen. Code, §§ 211, 245, subd. (a)(1), 422, subd. (a), 417, subd. (a)(1), 148, subd. (a)(1), 459.5, subd. (a)[1]; Veh. Code, § 20002, subd. (a).)  The trial court found that Arango personally used a deadly weapon during

---

[1] All statutory references are to the Penal Code unless stated otherwise.

commission of the robbery, suffered a prior serious felony and strike conviction, and served a prior prison term. (§§ 12022, subd. (b), 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).) We strike the stayed one-year prior prison term enhancement but otherwise affirm. (§ 667.5, subd. (b).)

This appeal concerns crimes including robbery, assault with a deadly weapon, and making criminal threats that Arango committed during three unrelated incidents during two days. Following a court trial, the court convicted Arango of nearly all charges and found the allegations true. On appeal, Arango raises claims of mental incompetency, sufficiency of evidence regarding the criminal threats, and sentencing errors.

*FACTUAL AND PROCEDURAL HISTORY*
*Criminal Threats and Weapon Brandishing Against S.G.*
*(Counts 5 & 6)*

In the late afternoon of March 24, 2018, S.G., a custodian at Stearns Wharf, noticed Arango sitting inside a vehicle that was parked in a red zone on the wharf. Arango opened the vehicle door, and said, "What are you going to do, you son of a bitch?" S.G. informed Arango that he was a city employee and that Arango's vehicle impeded traffic. Arango had a tattoo on his head and S.G. thought he was "a gangster." S.G. informed Arango that he was contacting harbor patrol. Arango responded: "You're not going to do that to me, you son of a bitch."

S.G. had difficulty with his radio reception and decided to telephone the police emergency dispatcher. Arango held a screwdriver, approached S.G., and stated that he was going to kill him. S.G. ran away and Arango followed until Arango realized S.G. was speaking to the police dispatcher. Arango then returned to his vehicle and drove away.

2

S.G. identified Arango from a photograph lineup and again in court during trial. Wharf surveillance cameras captured Arango driving on the wharf. S.G. informed the investigating police officer that he was afraid that Arango would stab him.

At trial, S.G. testified that he believed his life was endangered and that Arango would kill him. S.G. saw that Arango had a weapon, but S.G. "had nothing" to defend himself.

*Second Degree Robbery and Assault with a Deadly Weapon*
*Against C.M.*
*(Counts 1 & 2)*

In the mid-afternoon of September 25, 2018, C.M. drove to a gasoline station to purchase fuel. He had two children inside his vehicle. C.M. encountered Arango inside the convenience store of the gasoline station. Arango stared at C.M. and repeatedly asked, "What's up, dog?" Arango was angry and behaved in a hostile manner. He brandished a screwdriver and ordered C.M. outside. C.M. attempted to reason with Arango without success and then took a wine bottle for self-defense. Arango referred to C.M. as "a bitch."

By this time, the convenience store clerk was summoning police officers. Arango and C.M. left the convenience store. Arango entered his vehicle and drove toward C.M., who jumped out of the way. Arango then stopped, held a large knife, and left his vehicle. He chased C.M. who fled into the convenience store.

Inside the store, C.M. slipped and dropped his vehicle keys. Arango seized C.M.'s keys and left the store. C.M. demanded the return of his keys and threw a wine bottle at the window of Arango's vehicle. Police officers soon arrived but Arango had driven away. C.M. never recovered his vehicle keys.

C.M. identified Arango in a photograph lineup. Another customer of the gasoline station recorded the license plate number of Arango's vehicle. At trial, the prosecutor played a video recording of the incident which had been captured by the store surveillance cameras.

*Criminal Threats and Hit-and-Run Driving*
*Against T.D.*
*(Counts 4 & 9)*

In the mid-afternoon of September 25, 2018, T.D., an employee of the Postal Service, placed fuel in his mail truck at a gasoline station in Goleta. As he drove away, Arango drove into the station and scraped the bumper of the mail truck as the vehicles passed. T.D. left his vehicle and approached Arango, informing him that he damaged the mail truck. T.D. was required to report the accident to his supervisor. T.D. took photographs of the damage and Arango's vehicle.

Arango asked T.D. why he was taking photographs. Arango had blood on his nose and shirt and was "not talking normal." He referred to T.D. as "dog." Arango also had a tattoo on the back of his head. He provided his telephone number to T.D. but no other information.

Arango then threatened to kill T.D. and "was in [T.D.'s] face." T.D. believed that if he provoked Arango, he would be killed. Arango left the gasoline station and T.D. telephoned the police emergency dispatcher from the hotel lot across the street. T.D. reported that Arango threatened to kill him. At trial, the prosecutor played the recorded 911 telephone call.

A sheriff's deputy responded to T.D.'s call. T.D. gave him the license plate number of Arango's vehicle and Arango's

4

telephone number.  T.D. was "absolutely nervous" and stated that Arango threatened to "take [him] out."

*Resisting a Police Officer and Shoplifting*
*(Counts 7 & 8)*

In the early evening of March 25, 2018, Santa Barbara Sheriff's Deputy Eduardo Cazarez responded to a dispatch regarding a hit-and-run incident as well as a theft of beer from a gasoline station convenience store.  Arango's parents had provided information to aid sheriff's deputies in arresting him. Near Arango's residence, deputies found a knife and a screwdriver.  Deputies also located Arango's vehicle which had sustained damage from a hit-and-run incident in Goleta. Deputies arrested Arango who initially refused their commands regarding surrender.

*Competency Proceedings (§ 1368 et seq.)*

After the court trial commenced, criminal proceedings were suspended pursuant to section 1368 on January 15, 2019.  On July 16, 2019, the court found that Arango was restored to competency pursuant to section 1370 and proceedings were scheduled to resume.  Defense counsel declared another doubt regarding Arango's competency, however, on November 13, 2019. Following suspension of proceedings, the court found Arango competent to stand trial on January 2, 2020, on the basis of Arango's new psychological evaluations.

The trial court sentenced Arango as a second-strike offender to a prison term of 18 years 8 months.  The court also imposed various fines and fees and awarded Arango 963 days of presentence custody credit.

Arango appeals and contends that:  1) the trial court erred by not declaring a doubt sua sponte regarding his mental

5

competency; 2) insufficient evidence supports his conviction of making criminal threats against T.D.; 3) insufficient evidence supports his conviction of making criminal threats against S.G.; 4) the court erred by imposing a one-year prior prison term enhancement; and 5) equal protection of the law requires that he receive 14 days of conduct credit arising from his incompetency commitment period at the state hospital.

## DISCUSSION

### I.

Arango argues that the trial court erred by not declaring a doubt sua sponte regarding his competency and suspending criminal proceedings pursuant to section 1368. He asserts that the court abused its discretion and denied his constitutional rights to due process of law. Arango relies upon his testimony at trial that the witnesses were coached in their testimony, the video recordings were fabricated, and the victims were lying regarding threats made to them. He characterizes portions of his testimony as delusional and refers to earlier psychological evaluations that opined he was not competent to stand trial. Arango claims his testimony establishes substantial evidence of his incompetence. (*People v. Wycoff* (2021) 12 Cal.5th 58, 82 [if substantial evidence of incompetence exists, trial court may not resolve conflict without formal competence inquiry and expert opinions].)

Trial of an incompetent defendant violates the due process of law clauses of the federal and state Constitutions. (*Godinez v. Moran* (1993) 509 U.S. 389, 396; *People v. Nelson* (2016) 1 Cal.5th 513, 559.) Section 1368, subdivision (a) requires the trial court to suspend criminal proceedings at any time prior to judgment if the court reasonably doubts the mental competence of the defendant.

6

(*Nelson*, at p. 559.)  A defendant can create reasonable doubt through substantial evidence of mental incompetence, or the trial court can raise the issue itself.  (*Ibid.*)  " 'Evidence is not substantial enough to mandate a mental competence hearing unless it raises a reasonable doubt on the issue.' "  (*Ibid.* [more is required to raise a doubt as to defendant's competence than mere bizarre actions or bizarre statements].)  Absent a showing of incompetence that is substantial as a matter of law, the trial court's decision to not order a competency hearing is entitled to great deference.  (*Ibid.*)

When a competency hearing has already been held and the defendant found competent to stand trial, a court need not suspend proceedings to conduct a second competency hearing unless it is presented with a substantial change of circumstances or new evidence casting serious doubt on the competency finding. (*People v. Mendoza* (2016) 62 Cal.4th 856, 884.)  The court may take its personal observations into account in determining whether there has been some significant change in the defendant's mental state.  (*Id.* at p. 885.)  The court " 'must always be alert' " to a change in circumstances regarding a defendant's competence.  (*Ibid.*)

The trial court did not abuse its discretion by not declaring a doubt regarding Arango's competence sua sponte because evidence of a significant change in Arango's mental state was insubstantial.  Two months prior to his testimony, Arango admitted to evaluator Doctor Carolyn Murphy that the evidence against him established his guilt, in part based upon video-recordings of the incidents.  Arango informed Murphy that " 'they' have 'got him' on those cases."  He also acknowledged that he had a knife and that he was guilty of the charged crimes.

7

At trial, Arango testified that he did not threaten the victims, did not have a knife, and that he found vehicle keys on the floor of the convenience store.  Several weeks prior to his testimony, his attorney informed the court that Arango was medical compliant.  The trial court could take its personal observations into account and determine whether evidence of a changed mental state was substantial or whether Arango was malingering.  Mere bizarre statements do not necessarily indicate that Arango was incapable of cooperating in his defense or did not understand the charges against him.  (*People v. Nelson*, *supra*, 1 Cal.5th 513, 559.)

## II.

Arango contends that insufficient evidence supports his conviction of making criminal threats against T.D.  In particular, he asserts that there is insufficient evidence that T.D. was in reasonable sustained fear of great bodily injury or death.

The essential elements of a criminal threat are:  1) the defendant willfully threatened death or great bodily injury to another person; 2) the threat was made with the specific intent that it be taken as a threat, regardless of the defendant's intent to execute it; 3) the threat was on its face and under the circumstances in which it was made, so unequivocal, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution; 4) the threat caused the person threatened to be in sustained fear for his or her own safety or that of an immediate family member; and 5) this fear was reasonable under the circumstances.  (§ 422; *People v. Holmes* (2022) 12 Cal.5th 719, 750.)  "Sustained fear" is a period of time that extends beyond what is "momentary, fleeting,

or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.)

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) Our review is the same in a prosecution primarily resting upon circumstantial evidence. (*People v. Rivera* (2019) 7 Cal.5th 306, 331.) We do not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].) We must accept logical inferences that the trier of fact might have drawn from the evidence although we may have concluded otherwise. (*Rivera*, at p. 331.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.) In our review, we focus upon the evidence that was presented, rather than evidence that might have been but was not presented. (*People v. Story* (2009) 45 Cal.4th 1282, 1299.)

Sufficient evidence supports the making of criminal threats against T.D., including the element of placing T.D. in sustained fear. Arango was "in [T.D.'s] face," and was not behaving "normal." Arango had blood on his face and clothing, a tattoo on the back of his head, and "his eyes were rolled backward." T.D. feared for his life after Arango threatened to kill him. T.D.

9

placed the police emergency call from inside his locked mail truck parked in the hotel lot across the street because he feared Arango would return to the gasoline station. The parties had unfinished business concerning the accident because Arango was angry that T.D. had taken photographs of the vehicle damage. Arango also did not provide insurance information or his driver's license to T.D. The sheriff's deputy who took T.D.'s complaint approximately 17 minutes later described T.D. as "very nervous" and "scared." Sufficient evidence supports the finding of sustained fear. (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349 [element of sustained fear met during one-minute incident where victim heard the threat and saw weapon].)

*III.*

Arango contends that insufficient evidence supports his conviction of making criminal threats against S.G. He asserts that the incident was only an emotional outburst regarding a parking dispute. Arango relies upon *People v. Felix* (2001) 92 Cal.App.4th 905 and *In re Ricky T.* (2001) 87 Cal.App.4th 1132.

Arango threatened S.G. with a stabbing instrument and stated that he intended to kill him. Arango pursued S.G. as he fled, but returned to his vehicle when he realized that S.G. was contacting the police. S.G. believed Arango was "a gangster" and was concerned that he had no weapon to defend himself. Arango learned that S.G. was a city employee who was a custodian of the wharf. This is sufficient evidence of the making of criminal threats, including the element of sustained fear.

*People v. Felix*, *supra*, 92 Cal.App.4th 905 and *In re Ricky T.*, *supra*, 87 Cal.App.4th 1132 are distinguishable. *Felix* involved a threat toward another person that the defendant made to his psychologist. The court concluded that the threat was

10

made in a setting where the patient had an expectation of confidentiality and the patient never intended that the threat be communicated to the victim. (*Id.* at pp. 908, 914.) *Ricky T.* involved a threat by a juvenile to his high school teacher that the teacher did not report until the following day. (*Id.* at p. 1138.) There also was no evidence of imminent confrontation. By contrast, the threat against S.G. was immediate and accompanied by Arango pursuing S.G. while holding the screwdriver.

## IV.
### Sentencing Contentions
### Prior Prison Term

Arango argues that the trial court improperly imposed and stayed a one-year prior prison term enhancement pursuant to section 667.5, subdivision (b). He points out that the statute has been amended to apply only where the prison term was served for a sexually violent offense.

Arango's prior prison term was served for crimes of robbery, assault, and making criminal threats. The Attorney General concedes that imposition of the prior prison term enhancement was improper. Accordingly, we modify the judgment to strike the one-year enhancement. (*People v. Lopez* (2019) 42 Cal.App.5th 337, 341-342.)

### Conduct Credits During Incompetency Commitments

Arango also contends that equal protection of the law requires that he receive conduct credit for the period that the criminal proceedings were suspended pursuant to section 1368. Such conduct credit, had he remained in county jail confinement during that time, would amount to 14 days. He acknowledges that our Supreme Court has rejected this claim in *People v.*

11

*Waterman* (1986) 42 Cal.3d 565, 569 [criminal-incompetence statute does not expressly allow conduct credit]. Arango states that he raises the claim to preserve further review.

*People v. Waterman, supra*, 42 Cal.3d 565, 571, footnote 4, concluded that the Legislature has drawn conduct credit distinctions among persons awaiting trial. *Waterman* held that equal protection of the law does not require that persons confined for treatment of incompetence receive the benefit of work and conduct credit: "The incompetence program . . . is a special form of *pretrial* detention not at all concerned with criminal rehabilitation; its purpose is restoration of a specific mental state without which the criminal process cannot proceed." (*Id.* at p. 569.) The Legislature decided "that important therapeutic goals are not served by a conduct-credit system" in incompetency proceedings. (*Id.* at p. 570.) We are bound by this judicial decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Effective January 1, 2022, section 4019, subdivision (a)(8) was amended to expand eligibility for presentence conduct credit "[w]hen a prisoner is confined in or committed to a *state hospital or other mental health treatment facility . . . .*" (Stats. 2021, ch. 599, § 3, italics added.) The statute does not apply retroactively, however, nor does the failure to apply retroactive conduct credit deny an incompetent committee equal protection of the law. (*People v. Orellana* (2022) 74 Cal.App.5th 319.)

*DISPOSITION*

We strike the stayed one-year prior prison term enhancement and direct the trial court to prepare an amended abstract of judgment and forward it to the Department of

Corrections and Rehabilitation.  The judgment is otherwise affirmed.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.

We concur:


YEGAN, J.


TANGEMAN, J.

Brian E. Hill, Judge

Superior Court County of Santa Barbara

_____

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.