Filed 10/31/23  P. v. Martinez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARCELLA ELIZABETH MARTINEZ,<br><br>Defendant and Appellant. | F085368<br><br>(Super. Ct. No. 15CR-06594)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Defendant Marcella Elizabeth Martinez struck her sleeping cousin with a machete on December 9, 2015. Defendant's cousin suffered a wound to his hand. When contacted by officers, defendant said that she needed mental health assistance.[1] Defendant was committed to a state hospital for restoration to competency and later pleaded no contest to attempted murder and admitted that she personally inflicted great bodily injury. The trial court sentenced defendant to a term of eight years.

On appeal, defendant argues only that the trial court erred by failing to award her presentence conduct credit for the time she spent confined in Napa State Hospital receiving treatment for restoration of her competency. Applying equal protection principles, we conclude defendant must be afforded the same opportunity for presentence conduct credit that defendants receiving competency treatment in a county jail facility have been given under legislation that became effective January 1, 2019. Accordingly, we will remand the matter to the trial court to recalculate defendant's custody credits.

## PROCEDURAL BACKGROUND

The District Attorney of Merced County filed a complaint on December 11, 2015, charging defendant with attempted murder (Pen. Code, §§ 664, 187, subd. (a))[2] and assault with a deadly weapon (§ 245, subd. (a)(1)). Prior to defendant's preliminary hearing, defense counsel raised a doubt as to defendant's competency pursuant to section 1368, and the trial court suspended proceedings. The trial court found defendant incompetent to stand trial and committed her to Napa State Hospital on March 29, 2016.

Thereafter, the medical director of Napa State Hospital filed a certificate of restoration to competence pursuant to section 1372 on July 15, 2016. The trial court

---

[1]     These facts are found in the preliminary hearing transcript as defendant pleaded no contest, and the facts of the crime are not relevant to the issue defendant raises in her appeal.

[2]     Undesignated statutory references are to the Penal Code.

found defendant competent to stand trial on September 7, 2016, proceedings were reinstated, and defendant entered a plea of not guilty and not guilty by reason of insanity on January 13, 2017. Defendant was held to answer after her preliminary hearing on May 1, 2017.

The District Attorney of Merced County filed an information on May 2, 2017, charging defendant with assault with a deadly weapon (§ 245, subd. (a)(1)) and alleging that defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)). Defendant entered a plea of guilty, admitted that she personally inflicted great bodily injury, and waived a jury trial on the issue of her sanity. After a hearing, the trial court found that defendant was insane at the time of the crime and a danger to the health and safety of herself and others. After referring defendant for a placement report, the court committed her to the State Department of State Hospitals. Defendant was admitted to Napa State Hospital on December 6, 2017.

Defendant filed a motion on April 16, 2021, and, while the caption of the motion requested release from the state hospital upon restoration of sanity, the body of the motion only requested copies of her progress reports, a request granted by the trial court. On July 13, 2022, defendant moved to have her guilty plea declared null and void under the authority of *People v. John* (2019) 36 Cal.App.5th 168, a case holding that a plea of guilty is incompatible with a plea of not guilty by reason of insanity and, therefore, null and void. The trial court vacated defendant's guilty plea and again suspended criminal proceedings pending a determination as to defendant's competency on August 1, 2022.

The District Attorney of Merced County filed an amended information on November 3, 2022, charging defendant with attempted murder (§§ 664, 187, subd. (a); count 1) and assault with a deadly weapon (§ 245, subd. (a)(1); count 2) and alleging defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)) as to counts 1 and 2 and personally used a deadly weapon (§ 12022, subd. (b)(1)) as to count 1. The trial

3.

court found defendant was competent to stand trial, and on November 3, 2022, defendant pleaded no contest to count 1 and admitted that she personally inflicted great bodily injury.

The trial court sentenced defendant to five years for count 1, plus three years for the great bodily injury enhancement, for a total term of eight years in prison. The probation officer calculated that defendant was in Merced County jail for a total of 863 days from December 9, 2015, through December 6, 2017, and from July 21, 2022, through December 1, 2022. The probation officer also noted that defendant was at Napa State Hospital for a total of 1,486 days from December 7, 2017, through December 21, 2021, and 201 days from January 1, 2022, through July 20, 2022.[3] The probation officer calculated defendant was in actual custody 2,550 days and earned conduct credits of 129 days while in local custody and 30 days while in the state hospital (calculated at 15 percent of conduct credit pursuant to section 2933.1).

The trial court denied defendant's request for conduct credits commencing from the date she was admitted to the state hospital pursuant to former section 4019, as amended by Senate Bill 317, and awarded her 863 days local credit, 129 days good time or work credit, 1,687 days for her time in the state hospital, and 30 days good time or work credit for the time spent in the state hospital since January 1, 2022, for a total of 2,709 days. In addition, the trial court ordered defendant to pay a $2,400 restitution fine (§ 1202.4, subd. (b)), a stayed $2,400 parole revocation restitution fine (§ 1202.45, subd. (a)), a $40 court operations assessment (§ 1465.8), and a $30 criminal conviction

---

**3**      Senate Bill No. 317 (2021–2022 Reg. Sess.) (Senate Bill 317) amended former section 4019, subdivision (a)(8) to permit a prisoner confined in a state hospital or other mental health treatment facility, or in a county jail treatment facility, to have up to two days deducted from the prisoner's period of confinement for every four-day period for performing labor and abiding by the rules and regulations established by the prisoner's custodian. (Stats. 2021, ch. 599, § 3, eff. Jan. 1, 2022.)

assessment (Gov. Code, § 70373). The court reserved ruling on victim restitution (§ 1202.4, subd. (f)(2)).

Defendant filed a timely notice of appeal on December 6, 2022.

## DISCUSSION

Defendant contends, on equal protection grounds, that she should receive conduct credit for the time she spent in Napa State Hospital undergoing treatment for restoration of her competency from January 1, 2019, through January 1, 2022, under former section 4019, as amended by Senate Bill No. 1187 (2017–2018 Reg. Sess.) (Senate Bill 1187). The People concede that defendant is entitled to the conduct credit on equal protection grounds. Applying equal protection principles, we also conclude defendant must be afforded the same opportunity for presentence conduct credit that defendants receiving competency treatment in a county jail facility have been given under legislation that became effective on January 1, 2019. Accordingly, we will remand the matter to the trial court to recalculate defendant's custody credits.

We review this claim de novo. (*People v. Yang* (2022) 78 Cal.App.5th 120, 125 (*Yang*), citing *California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 208.)

Section 4019 provides for prisoners in specific facilities to earn conduct credit for performing assigned labor and for complying with applicable rules and regulations. (§ 4019, subds. (a)–(c).) Historically, defendants treated in state hospitals or other facilities were not statutorily eligible for conduct credit. (*Yang*, *supra*, 78 Cal.App.5th at p. 125, citing *People v. Waterman* (1986) 42 Cal.3d 565, 568–571.)[4] As noted by *Yang*,

---

[4] In *People v. Waterman*, the California Supreme Court found no constitutional equal protection violation in the fact that offenders committed to the California Rehabilitation Center for narcotics addiction were entitled to conduct credit, while defendants receiving treatment while committed at a state hospital were not. (*People v. Waterman*, *supra*, 42 Cal.3d at pp. 568–571.) The court reasoned that the treatment goal for incompetent defendants would be hindered if good behavior reduced the therapy period and that treatment of those with narcotics addictions

in 2007, the statutory landscape changed when section 1369.1 was enacted to permit county jails to be " 'treatment facilit[ies]' " for purposes of section 1367 et seq. and, in 2012, amended to expand the available treatment. (*Yang*, at p. 126.) Additionally, the Legislature gave the State Department of State Hospitals jurisdiction over county jail treatment facilities that provide competency restoration services. (*Ibid*.)

Effective January 1, 2019, Senate Bill 1187 amended former section 4019 to add subdivision (a)(8), which provided that prisoners undergoing competency restoration treatment in county jail facilities would be eligible for conduct credits. (Stats. 2018, ch. 1008, § 5.) As noted by *Yang*, "[T]he legislative history confirms, Senate Bill 1187 was enacted to ensure that [incompetent to stand trial] defendants being held and treated in county jail would be entitled to earn conduct credits just as other jail inmates. (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 5.) Although legislative analyses reflected the Legislature's express awareness that [incompetent to stand trial] defendants in a state hospital were not statutorily or constitutionally entitled to conduct credit under [former] section 4019, the analyses disclosed no explanation why the Legislature—at that point—declined to similarly extend the availability of conduct credit to such defendants. (See, e.g., *ibid*.; Off. of Assem. Floor Analyses, 3d reading analysis of Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended Aug. 23, 2018, p. 4; Sen. Com. on Public Safety, Rep. on Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended Feb. 15, 2018, pp. 4–5.)" (*Yang*, *supra*, 78 Cal.App.5th at pp. 126–127.)

In 2021, Senate Bill 317 expanded section 4019, subdivision (a)(8) to provide that prisoners receiving competency treatment in a state hospital could also receive conduct

---

was meant to offer postconviction rehabilitative treatment. (*Id*. at pp. 569–570.) The court also concluded that pretrial confinement for treatment of incompetence was so different from other forms of pretrial detention that equal protection principles do not entitle defendants confined for treatment to be afforded the benefit of the work-and-conduct-credit system available to persons confined in jail prior to trial. (*Id*. at p. 571, fn. 4.)

credits.  (Stats. 2021, ch. 599, § 3, eff. Jan. 1, 2022.)  "The legislative history indicates the bill was meant to 'ensure[] incompetent defendants are eligible for the same time served credit for good conduct as their competent counterparts, while receiving treatment in any treatment facility or as an outpatient, not just … county jail treatment.' " (*Yang*, *supra*, 78 Cal.App.5th at p. 127, quoting Assem. Com. on Appropriations, Rep. on Sen. Bill No. 317 (2021–2022 Reg. Sess.) as amended July 12, 2021, p. 2.)

Three of our sister courts have addressed this issue with different outcomes.  (See *People v. Shkrabak* (2023) 89 Cal.App.5th 943, 945, 951 (*Shkrabak*) [agreeing with *Yang* that Shkrabak was entitled to actual and conduct credits accrued for time spent in the state hospital while receiving competency treatment under principles of equal protection]; *Yang*, *supra*, 78 Cal.App.5th at pp. 131, 138 [Yang entitled to actual and conduct credits accrued for time spent in the state hospital while receiving competency treatment under principles of equal protection]; but see *People v. Orellana* (2022) 74 Cal.App.5th 319, 334–338 (*Orellana*) [defendants who could not earn conduct credits in a state facility prior to 2022 amendment to section 4019 not similarly situated to inmates in county jail who were actually subject to 2019 amendment to section 4019 because the very nature of conduct credits is directed at incentivizing future conduct].)  We find the reasoning of *Yang* and *Shkrabak* more persuasive than that of *Orellana*.

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally.  [Citation.] Accordingly, ' "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." ' [Citation.]  'This initial inquiry is not whether persons are similarly situated for all purposes, but "*whether they are similarly situated for purposes of the law challenged.*" ' " (*People v. Brown* (2012) 54 Cal.4th 314, 328, second bracketed insertion in original, second italics added (*Brown*).)  Pursuant

7.

to Senate Bill 1187, which became effective January 1, 2019, defendants became eligible for conduct credits for the time they spent receiving competency treatment in a county jail facility, but this eligibility did not extend to defendants receiving competency treatment in a state hospital. We agree with *Yang* and *Shkrabak* that prisoners undergoing competency treatment in a state hospital are similarly situated with those prisoners undergoing competency treatment in a county jail facility. (*Shkrabak*, *supra*, 89 Cal.App.5th at pp. 950–951; *Yang*, *supra*, 78 Cal.App.5th at p. 129.)

In *Orellana*, Orellana had been committed to a state hospital and spent time undergoing treatment for restoration of competency after Senate Bill 1187 took effect. (*Orellana*, *supra*, 74 Cal.App.5th at pp. 323, fn. 3.) Orellana argued that Senate Bill 317 established that there was no rational basis or compelling state interest in treating those undergoing competency treatment in a state hospital differently from those undergoing treatment in a county jail facility, the distinction made when Senate Bill 1187 amended former section 4019, effective January 1, 2019. (*Orellana*, at p. 339.) *Orellana* rejected that argument based upon the Supreme Court's decision in *Brown*, *supra*, 54 Cal.4th 314. (*Orellana*, at p. 339.)

"For eight months during 2010, a now superseded version of section 4019 that was enacted during a state fiscal emergency temporarily increased the rate at which local prisoners could earn conduct credits." (*Brown*, *supra*, 54 Cal.4th at pp. 317–318, fn. omitted.) In *Brown*, our Supreme Court granted review to decide whether former section 4019 retroactively benefited prisoners who served time in local custody before the date on which it became operative. (*Brown*, at p. 318.) Deciding that the statute was not retroactive, the Supreme Court then addressed Brown's argument that former section 4019 treated similarly situated prisoners differently in violation of federal and state constitution equal protection principles. (*Brown*, at pp. 323, 328–330.)

8.

The version of section 4019 at issue in *Brown* went into effect while Brown's appeal was pending.  (*Brown*, *supra*, 54 Cal.4th at pp. 318–319.)  Brown argued that he, having served time before the effective date of former section 4019, was treated differently than prisoners serving time after its effective date because he was unable to earn conduct credits at the higher rate for the time he had already served.  (*Brown*, at pp. 328–329.)  After comparing the prisoners who served time before the statute's effective date to those serving time after the statute's effective date, the Supreme Court concluded that the two classes of prisoners were not similarly situated because the purpose of former section 4019 was to authorize incentives for good behavior, and prisoners who served time before the effective date of former section 4019 could not have modified their behavior with reference to a statute that was not yet enacted.  (*Brown*, at pp. 328–329.)  Our Supreme Court concluded, "[T]he important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response.  That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows."  (*Ibid*.)  Therefore, prisoners who already served their time in custody are not similarly situated to those serving time after the effective date of former section 4019.  (*Brown*, at p. 329.)

*Orellana* characterized *Brown* as holding that "entitlement to conduct credits is directed at '*future conduct* in a custodial setting' [citation] and effectively precludes the court from deeming two groups similarly situated for purposes of earning conduct credits when the time in custody preceded the availability of incentive-based credits." (*Orellana*, *supra*, 74 Cal.App.5th at p. 341.)  As we explained, in 2021, Senate Bill 317 expanded former section 4019, subdivision (a)(8) to provide that prisoners receiving competency treatment in a state hospital could receive conduct credits.  (Stats. 2021, ch. 599, § 3, eff. Jan. 1, 2022.)  Senate Bill 317 applied prospectively and, therefore,

9.

prisoners in custody in a state hospital prior to its effective date cannot receive conduct credits, but prisoners in a state hospital after Senate Bill 317's effective date can receive conduct credits. Based upon *Brown*, *Orellana* is correct in holding that a defendant who served time in a state hospital prior to the effective date of Senate Bill 317 is not similarly situated to prisoners who served time in a state hospital after Senate Bill 317's effective date.

However, effective January 1, 2019, Senate Bill 1187 amended former section 4019 to add subdivision (a)(8), which provided that prisoners undergoing competency restoration treatment in *county jail facilities* would be eligible for conduct credits. (Stats. 2018, ch. 1008, § 5.) Senate Bill 1187 did not provide for prisoners undergoing competency restoration treatment in *state hospitals* to receive conduct credits. As to Senate Bill 1187, defendant challenges treating prisoners in state hospitals differently from those prisoners in county jail facilities. As our Supreme Court noted, " 'This initial inquiry is not whether persons are similarly situated for all purposes, but "*whether they are similarly situated for purposes of the law challenged.*" ' " (*Brown*, *supra*, 54 Cal.4th at p. 328, italics added.) We disagree with *Orellana* that *Brown* controls our analysis of Senate Bill 1187's disparate treatment of prisoners serving time while their competency is restored based upon whether this is done in a state hospital or a county jail facility. If Senate Bill 1187 *had* applied to prisoners in state hospitals and county jail facilities, *Brown* would preclude defendant from arguing that equal protection principles are violated by treating prisoners differently based upon whether their custodial time was served before the effective date of the amendment.

As defendant argues that former section 4019, as amended in 2019 by Senate Bill No. 1187, violated her right to equal protection because she was similarly situated to a prisoner undergoing competency treatment in a county jail facility, but the 2019 amendment did not permit her to earn conduct credits for the time her competency was

being restored in a state hospital. Senate Bill 1187 did not treat similarly situated prisoners the same and, therefore, defendant was not able to earn conduct credits for the time she spent in state custody since former section 4019 was amended in 2019. *Brown* is not controlling. In other words, "the instant case concerns the disparate treatment of two groups of [incompetent to stand trial] defendants whose confinement for competency treatment postdated a statutory amendment that authorizes conduct credits only for those committed to a jail facility but not for those committed to a state hospital." (*Yang*, *supra*, 78 Cal.App.5th at pp. 130–131.)

The People agree that defendant's right to equal protection under the law has been violated and make no attempt to justify the disparate treatment with a compelling state interest. Therefore, we agree with *Yang* and *Shkrabak* that there is no basis for treating prisoners having their competency restored in state prison differently from those undergoing treatment in county jail facilities. (See *Shkrabak*, *supra*, 89 Cal.App.5th at pp. 950–951; *Yang*, *supra*, 78 Cal.App.5th at pp. 133–136.) We conclude that defendant is entitled to conduct credit for the time she spent receiving competency treatment in Napa State Hospital since January 1, 2019, the effective date of Senate Bill No. 1187. We will remand this matter for the trial court to include the number of conduct credits due to defendant from January 1, 2019, through January 1, 2022.[5]

## DISPOSITION

The matter is remanded to the trial court to recalculate defendant's custody credits to include conduct credits pursuant to section 4019 for the time she spent in Napa State Hospital from January 1, 2019, through January 1, 2022.[6] The trial court should prepare

---

[5] The trial court did award conduct credits for defendant's time in the state hospital from January 1, 2022 (the effective date of Senate Bill 317), through July 20, 2022.

[6] Defendant argues that the trial court awarded defendant 30 days of conduct credit for the time she spent in the state hospital from January 1, 2022, through July 20, 2022, but this award was not reflected on the abstract of judgment. We note, however, that the total award of 2,709

11.

an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

HILL, P. J.

WE CONCUR:

SMITH, J.

DE SANTOS, J.

---

was set forth in the abstract of judgment and included the 30 days of conduct credit for defendant's time in the state hospital from January 1, 2022, through July 20, 2022.